## THOMAS LEGGETT,

### v.

## ALBERT EDWARDS and others.

In 1796, in the state of Connecticut, E. agreed to sell to C. certain lots of land in this state; for which he duly executed a deed of conveyance, of which, an acknowledgment by him was indorsed. C. paid part of the consideration, and gave promissory notes for the residue; but not having security at hand, for the payment of those notes, the deed was left in the hands of H. as an escrow, until security should be furnished. E. died in 1800, the notes not having been paid or secured. C. being indebted to the complainant, made to the complainant a deed of conveyance of these lots; informing him then or afterwards, that he had no title, and that the deed had been left with H. as security. After this information the complainant made overtures by indirect means, to get the deed from E. to C. out of the hands of H., and finally succeeded. E. or his representatives caused the true state of the case to be made known to the complainant, and the amount justly due on the notes to be demanded of him, which he refused to pay, relying on his title. The complainant took possession and sold the lands with warranty. In 1820, the heirs of E. commenced ejectments for the lands, which the complainant defended. On trial, H. proved the delivery of the deed, as he had before explained the fact to the complainant; and the judge being of opinion, that the deed was an escrow, verdicts were found for the lessors of the plaintiff, the defendants in this suit, upon which the complainant filed this bill.

This is in substance, the ordinary contract for the sale of lands, when the title remains in the vendor, as security.

Though not in form a mortgage, it is such, in substance.

Time is not of the essence of this contract: compensation may be made; and that compensation is interest.

Though the conduct of the complainant was immoral and reprehensible, and though the delay of both parties had been great, yet those circumstances do not deprive the complainant of rights previously acquired.

The complainant is entitled to relief, upon payment of the principal due on the notes, with interest costs and expenses both at law and in equity; including not only legal costs, but all resonable expenses of every kind, which the litigation has imposed on the defendants.

<div style="margin-left:2em">

*1825.*
*14th January.*

*Escrow.*
*Mortgage.*
*Costs.*
*Expenses.*

</div>

THE complainant filed his bill on the 6th August, 1821, setting forth in substance : that on or about the 22d December, 1798, one Edmund Curtiss junior of Connecticut, applied to him, to purchase a sloop then owned by him, and valued at 1,500 dollars : in payment of which he offered to convey two lots of land, known as numbers 65 and 49, in in township number 12, fourth range, containing each 320 acres, situate in the then town of Northfield, now town of Perrington, county of Ontario ; whereof he claimed and represented to the complainant that he was absolute owner in fee without incumbrance.

That the complainant agreed to his proposition, and sold and delivered him the sloop, and received in payment thereof a conveyance under his hand and seal, dated 22d December, 1798, whereby he, Curtiss, granted and conveyed to the complainant, his heirs and assigns, the said two lots of land in fee simple, with the usual covenants of warranty, and represented at the same time, that he had a clear title; and that when the complainant sold the sloop and received the said conveyance, he had no knowledge or suspicion to the contrary.

That about one year after the complainant had received the said deed, one John Edwards junior of Connecticut, of whom Curtiss informed the complainant that he had purchased the said lots, called on the complainant at New York, and stated, that Curtiss still owed him some balance of the consideration money he was to pay therefor, and complained of the hardship of the case, and that he should lose by Curtiss, who had become embarrassed in his circumstances; but did not pretend to the complainant that he had any claim on the said lots, or that the deed which he had given to Curtiss for said lots, had been conditionally delivered; although he wished the complainant to make some arrangement respecting it, and to relieve him, and prevent his being a loser. That the complainant represented to him, that he had, as the fact was, fairly purchased the said lots for a full consideration without any knowledge of his claim, and declined at that time, becoming obligated to pay his demands without farther investigation. That the complainant soon afterwards, in or about the month of January 1800, went to Poughkeepsie in this state, where he saw Curtiss, then confined there for debt, who then for the first time informed him that the deed to him from the said Edwards had been lodged with one Haines of Connecticut, as security for his obligations for some part of the consideration money of the purchase by him from the said Edwards; upon which some balance, which he represented to be of small amount, was due, and gave to the complainant an original receipt signed as he believes by the said Edwards, dated 23d May, 1796, acknowledging the receipt, from Curtiss of £512, in full of a note of hand which Curtiss had

1825.

LEGGETT
v.
EDWARDS.

given on the 23d March preceding, and which he assured the complainant was the consideration money of his purchase of the said Edwards.

That some time afterwards, and to the best of the complainants's recollection in the month of March ensuing, 1800, Haines and Curtiss both came to the city of New York, where the complainant resided, Haines bringing with him the said deed from the said Edwards to Curtiss ; which he offered to deliver to the complainant on being paid some small amount for which he claimed or pretended that the said deed had been left with him as a security, and which was all the claim or demand that he pretended to have on the same, or for which the said deed was lodged with him.   That the complainant being desirous of quieting his title, consented to his demand, and paid him the amount required ; which to the best of his recollection and belief, was about 100 dollars ; and Haines thereupon either delivered directly to the complainant the said deed, or else gave the same to Curtiss, who at that time delivered the same to the complainant, he being very confident that he received the said deed directly from Haines himself, but if he received it from Curtiss, he positively avers, that the same was delivered to him the complainant with the knowledge, assent and approbation of Haines, and in pursuance of his agreement to do so, on the complainant's paying him the said sum for that purpose above stated, and which was actually paid by the complainant.

That the last mentioned deed is duly executed under the hand and seal of the said Edwards, bearing date the 23d May, 1796, by which the said Edwards grants, bargains and sells the two before described lots of land for the consideration of £500, therein mentioned, to have been received to his satisfaction, to Curtiss, his heirs and assigns for ever, with the like covenants of warranty as are above specified to be contained in the deed from the said Curtiss to the complainant ; and the execution thereof appears to have been acknowledged on the same day, before a justice of the peace in Connecticut, who has subscribed a certificate thereof.   And the complainant avers, that by paying to Haines the money aforesaid, and receiving the said deed, he verily supposed,

that all further claim against him or the said lands, on the part of the said Edwards, was extinguished; and although the said Edwards lived several years afterwards, and as the complainant believes, had been made acquainted with the delivery of the said deed to the complainant, yet he never intimated or gave any notice to the complainant that such deed had not been duly delivered, or that he had any claim or lien on the said lands or the said deed: and the complainant insists, that by such delivery, even if the said deed had been lodged with Haines, as a security for any demand due to the said Edwards, the same became absolute at law.

That in full·confidence that he had acquired a clear and indisputable title, the complainant about the time he received the said deed, took actual possession of the said lots, and from time to time made sales of some parts, and by himself or his tenants occupied other parts thereof; and the complainant and those claiming under him have ever since been in the actual possession.

That the said Edwards departed this life about seven or eight years after the complainant received the said deed from Haines.

That on or about the month of October last, certain persons calling themselves Albert Edwards, Eliakim Edwards, Levi Edwards, Rebecca Northrop, John Edwards, Marina Edwards, Henry Edwards and Jane Edwards, as heirs or devisees of the said John Edwards junior deceased, commenced actions of ejectment in the supreme court of this state, against Timothy E. Crossman, Philip Piester and Abijah Northrop, respectively, tenants in possession of parts of the said lots, under or as purchaser from the complainant; which suits he took on himself to defend, and which were tried at the Ontario circuit in June last: that upon the said trials, Haines testified, that the said deed from the said Edwards to Curtiss, at the time of its execution had been lodged in his hands as an escrow, to be delivered on the payment of two certain notes of hand, given by Curtiss to the said Edwards, for a small part of the consideration money expressed in the said deed, respectively dated at Stratford aforesaid, the 23d May, 1796, one of which was for £80, payable the 1st No-

vember then following, with interest from 23d March, then past; and the other for £80, payable the 1st April, 1797, with interest from 23d March, then past, which notes were produced on the said trial, and to which reference is prayed. That on the said trials, or some of them, Haines further testified, that the said deeds had been left in the hands of one Backus, a counsellor at law in Connecticut, and had been delivered up to the complainant without the payment of the said notes, or any compliance with the condition upon which the same had been placed in the hands of him Haines. Upon which testimony, the presiding judge at the circuit, expressed himself of opinion, that said deed could not in law be deemed to have been delivered, and verdicts were thereupon rendered in favor of the plaintiffs, against the respective tenants aforesaid. And the complainant is advised that judgments in those actions will be perfected about the 10th of August, instant, and that the plaintiffs intend to issue executions thereon, and turn the tenants out of possession.

That the testimony of Haines was a perfect surprise upon the complainant; the said deed being in fact delivered by Haines himself, or with his knowledge and approbation.

The complainant insists, that the delivery of the said deed in the manner before stated, was a valid delivery, and he hopes to be able if permitted, fully to establish the same. But in case the same should not be deemed a valid delivery, so as to vest in the complainant the legal and actual title to the said land, yet he insists, that he ought to be permitted to establish the same, on paying such balance as shall appear justly to be due on the said notes of £80 each, and for which only, the said deed was alleged to be lodged in escrow, as aforesaid. And the complainant alleges, that he is ignorant what amount, if any, remains due on the said notes, but believes and therefore charges that little only, if any, remains due. And he offers, in case the said delivery of the deed as aforesaid shall not be satisfactorily established, forthwith to pay such amount as shall be ascertained to be justly due thereon, or to bring the same into court, to be disposed of as the court shall see just and equitable. And the complainant has caused, since the said trial, application to be made to

the said defendants or their attorney to come to an amicable arrangement of the premises, which they have declined to do. And the complainant shows, that he is bound to warrant and defend the said tenants in their respective possessions.

The defendants filed their answer, by which they deny all knowledge of the contract between Curtiss and the complainant, and of the pretensions made by Curtiss to the ownership of the land; but have heard and believe, that the complainant did in 1798, sell to Curtiss a sloop of little value for 1500 dollars, when it was not worth half that sum, as the complainant knew; and they have heard and believe, that Curtiss did not at the time pretend that he owned the lots, but gave his note for the sloop: they believe that Curtiss soon after became insolvent and embarrassed, and took the benefit of the insolvent act; and that soon thereafter the complainant prevailed upon Curtiss to give him a deed for the lots, dated as aforesaid; and that Curtiss at the same time informed him that he had no title to the lots.

They say, they never knew or heard that John Edwards called on the complainant, as mentioned in the bill. They admit, that the complainant went to Poughkeepsie, where Curtiss was in jail, and prevailed on him to execute to him a deed for the lots; but that Curtiss told him at the same time that he had no deed for the same, but only a contract; and told him that a deed was made out and put into the hands of one Haines, because Curtiss did not get security for the consideration, which he was to have done in a few days, and never did. They admit, that Curtiss then delivered to the complainant an original receipt signed by John Edwards junior, dated 23d May, 1796, by which he acknowledged the receipt from Curtiss of £512 in full of a note of hand which Curtiss had given on the 23d of March preceding; but they deny, that the money therein was the consideration of the purchase of the land from Edwards; or that Curtiss so represented. That on the 23d March, 1796, Curtiss applied to John Edwards junior, and offered to give him £512 for the lots which Edwards agreed to take, on which Curtiss gave him a note for the amount, payable on the 1st of May then next, and Edwards gave him a bond for a deed. That

Curtiss did not pay on the 1st of May; and that afterwards on the 23d of May, 1796, they met at one David Beardsley's. Edwards had made out a deed for the lots according to his bond, which he brought with him. Curtiss had not got his security for the consideration. They then made a new agreement, by which Curtiss was to take up his first note of £512 and pay £200 in hand, which he did, and as Edwards then was indebted to Daniel Salmon and John Haines, it was agreed, that Curtiss should give one note for £152 to Salmon and Haines, which he did, and two notes to Edwards, with satisfactory security for the residue.

The two notes were made accordingly, and were for £80 each: one payable on the 1st April, 1796, the other the 1st of November, 1796, with lawful interest on each, from the 23d March, 1796, both dated at Stratford, 23d May, 1796. But inasmuch as Curtiss had not then got any security, it was agreed, that the deed for the lots should be left in the hands of John Haines, not to be delivered to Curtiss till he had given satisfactory security for the payment, which he was to do in a few days, and before either of the notes became due.

That thereupon the bond for the deed was given up, and the first note aforesaid for £512, was to have been given up also, but on said Edwards making search in his pockets for the same it could not be found; whereupon Edwards gave Curtiss a receipt for the same, which is the same receipt mentioned in the complainant's bill, as delivered to the complainant; and the deed from Edwards to Curtiss was at the same time delivered to Haines as an escrow.

That while the deed continued in the hands of Haines as an escrow, John Edwards died, and the notes have never been paid or secured, which notes are now in possession of the defendants, ready to be produced. The defendants charge expressly, that in the life of the said Edwards, and about the year 1790, the complainant sent an agent to Stratford to inquire about the lands, to whom the said John Edwards expressly gave the information of the true manner in which the said Curtiss derived his claim to the lands and all the circumstances aforesaid.

The defendants further state, that about the year 1800, the complainant hired an attorney of the name of Backus, to prevail upon Haines to give up the deed without paying the consideration, which Haines refused, and thereupon the complainant caused Haines to be summoned before Backus, who was a justice of the peace, to make an affidavit in pursuance of a law of Connecticut, of the manner in which the deed was left with him. Haines thereupon appeared and testified, that the deed was left with him as an escrow as aforesaid, and that the time in which the notes were to be paid or secured, was to be within a few days as aforesaid, which affidavit or testimony of Haines was immediately sent by Backus to the complainant. Haines at the same time wrote or sent a letter to the complainant, repeating the same facts, which letter they believe the complainant received.

They charge also, that soon after the death of John Edwards junior, the defendant Albert Edwards, his administrator, went to New York, and offered to the complainant to procure a good deed for him, if he would pay the two £80 notes, which he then declined, but intimated he might soon do; and that soon after Albert Edwards sent Daniel Salmon to know his determination, and that the complainant informed Salmon that he had concluded not to comply with that offer, and that he was about to occupy the land, to acquire a title thereto by possession, and that as the heirs of Edwards lived out of the state, he thought they would do nothing about it.

That the heirs of Edwards afterwards, and sometime in the year 1820, again employed Salmon to go to New York, and repeat the offer to the complainant, and to inform him that the heirs were about to bring ejectments unless he complied, and that the complainant refused compliance.

They deny, that Haines ever went to New York in March, 1820, or at any other time; nor did he carry the deed with him to New York, and offer the same to the complainants, on being paid some small sum, for which he pretended the deed was left with him as security, nor did he ever see the complainant at New York.

They deny, that Haines ever delivered the deed to the com-

plainant.  But they admit, that Haines went to Poughkeep-
sie on his way to Stratford, sometime in 1802, and then saw
Curtiss, upon whom Haines made a demand of the balance of
the note given by Curtiss to him and Salmon, amounting to
about forty dollars : that Curtiss told him he could not pay it,
but if he would give up the deed from John Edwards to him,
he would give him fifty dollars for the same.  That Haines
informed Curtiss, he had left the deed with one Middlebrooks
in Connecticut, on his removal thence, and that it had been
left with him as an escrow, the condition being unperformed,
and the time for performance expired.  That Curtiss then in-
formed Haines, that he did not care any thing about it him-
self, but that the complainant had requested him to get the
deed by some means or other, as he thought by that means
he would secure a title.  That Haines then applied to counsel,
who informed him, that the deed was inoperative, the gran-
tor being dead ; and that soon afterwards, Haines delivered
the deed to Curtiss.  The defendants positively aver, that the
deed was never delivered with the assent of John Edwards,
or his representatives, nor was the condition ever fulfilled ;
and aver, that the deed was given up wrongfully.

They deny, that Haines ever delivered the deed to Leggett;
nor was it delivered with their assent ; nor did Haines ever
agree so to deliver it on being paid one hundred dollars.

The defendants deny, that this or any other sum was ever paid
by the complainant to Haines therefor.  They admit the execu-
tion of the deed, and the acknowledgment of it; but they deny,
that it was ever delivered, and say, that Curtiss was not present,
but the justice before whom it was acknowledged, redelivered
it immediately to Edwards, which was before Curtiss and Ed-
wards met on the 23d of May aforesaid, when the notes were
given and the deed deposited.

They say, that John Edwards died in September, 1800,
and never knew of the delivery by Haines nor assented to it.

They insist, that the delivery of the deed was illegal, and
conveyed no title, because the time for fulfilling the condition
had then long since expired, and as John Edwards was then
dead, no valid delivery could be made.

They deny, that the complainant took possession of the lots till 1806 ; but they admit, that Leggett hired one Perrington to go and girdle some trees and lay up some logs in a square form, about eighteen years ago, near the division line. But they deny, that any actual possession was then taken, nor can they find any deed upon record, prior to the 14th May, 1806.

They admit the actions of ejectment brought by the heirs of John Edwards junior, for the lands ; that the complainant took upon himself the defence of the actions, and that one of the actions was tried in Ontario county, in June last; and they state the chain of title which then appeared, and the proof of the deed from Edwards to Curtiss, and that Haines on the trial testified, that the deed had been delivered to him as an escrow, on the conditions aforesaid, which were never fulfilled, nor the delivery assented to by Edwards or his representatives; that he kept the deed till his removal from Stratford, when he left the same with other papers with Stephen Middlebrooks of Stratford, until after the death of John Edwards junior, and until about 1804, when he delivered it to Curtiss, in manner aforesaid ; and among other things, he testified, that the complainant had employed Backus to obtain the deed of him, who had demanded it in the name of Leggett.

They admit, that Haines testified, that the deed was left in escrow, for the two eighty pound notes and for the note to Haines and Salmon. They deny, that he testified that the deed had been left in the hands of Backus.

They admit, that upon the trial, the judge expressed himself most decidedly of opinion, that the deed had never been legally delivered; and that a verdict was taken for the plaintiff.

They state sundry receipts indorsed on the notes of £80 ; and they admit that the note to Salmon and Haines has been given up.

They admit, that Nathaniel W. Howell wrote a letter to James R. Lawrence, their attorney, received about the 1st August last, requesting to know whether the complainant would consent to receive the amount due on the two £80 notes, and costs in the ejectment suits, and quit claim the lots

to the complainant, which letter was never seen by them till the filing of the bill, and that Lawrence answered the letter, showing the reasons why the appellants were not bound to receive the same.

They admit, that the complainant is bound to warrant the tenants in their possessions : also, that they did intend to have issued executions &c.

On the part of the defendants, several witnesses were examined. The principal witnesses were the aforesaid John Haines and Daniel Salmon, who with some small differences not materially affecting the merits of the cause, confirmed the defendants' answers.

MR. HENRY for the complainant.

This is a case of great equity, in which, there is no relief at law. The lands have been sold to innocent purchasers, who have made valuable improvements. Even, if the complainant has used undue means, or has been criminally faulty, the court will not punish him by an outrageous forfeiture.

The case is not such a res judicata, as to be conclusive any where; certainly not in equity.

This is not an escrow, but an equitable mortgage. To call this an escrow is too technical : it was executed and acknowledged to have been delivered; and no new delivery or execution was necessary.

Two hundred pounds were paid on account of the land, and the deed was left with Haines, for security, " till the " notes should be paid." That is an indefinite deposite. It is a great and fundamental principle, that a court of equity will relieve against all forfeitures, if compensation can be made. This principle lies at the bottom of the question. Length of time is no bar in case of a mortgage : besides, it is not here insisted on : and we have possession.

Here, a payment in part was received upon the notes, on the very day on which they fell due. If Edwards then intended to insist on the strict rights attached to an escrow, it was faithless and fraudulent to receive payment of part. Payment on or after the day, waves a forfeiture, in equity. In Jackson v. Dunlap, 1 John. cases, 114. Kent J. says, that such a deed " creates an equitable lien."

The subsequent conduct of Leggett, even admitting it to have been fraudulent, can not impair the mortgage. If it was an equitable mortgage, he might purchase, subject to it.

Haines gave up the deed with intent to pass title. As to his letter, there is no proof that it ever reached Leggett; and Leggett may have fairly refused to pay.

It is very hard to deprive the tenants, who have made valuable improvements, of their land. They should be indemnified.

This is not a bill at law. The court will entertain it to relieve against the forfeiture. 2 Freem. 9. 1 Mod. Rep. 300. Finch 445.

In Wheeler v. Whitall, 2 Freem. 9. the difference was taken between a condition precedent depending on payment of money, or on a collateral act; that in the former case relief might be given, since compensation could be made; and there was no limitation over. Fry v. Porter, 1 Mod. Rep. 300. went upon the same distinction. See also 2 Vern. 333 & 366. 1 Salk. 156. 2 Bro. P. cases, 256. 1 Bro. ch. cases 156.

Mr. Henry analyzed these cases in chronological order; and then cited, Francis' Maxims 12. p. 44 & 52. note a. In p. 49. note c. it is said, "the distinction is only when compensation can or can not be made," and see, 1 Fonb. Eq. 391. note k. to the same effect.

A mortgagee may recover at law, and yet, the mortgagor, go into equity to redeem. That is this case.

If length of time is intended to be insisted on, it must be set up as a bar by pleading. 2 John. cases 432. 4. 1 John. ch. 47. 4 Bro. C. C. 257. 264. It can not be taken advantage of, on demurrer. 3 Bro. C. C. 633.

But if the length of time would have been a bar, the defendants have waved it, by their offers to receive payment. Those offers wave all objections.

If this were but a possibility, it is still assignable in equity, if coupled with an interest. 1 Fonb. Eq. 201. Here the purchaser had paid £200, and the deed was left as a pledge.

We do not come here for a specific execution of an agreement, but for the redemption of a mortgage. If Leggett did

wrong, it will not bar his redemption; though we admit he ought to have gone farther, and to have indemnified Edwards against all expenses.

In Finch, 178, a plea that the money was to be paid upon a condition, and that the party died before the condition was performed, was not allowed. But here, the defendants propose, to retain the consideration paid, and to turn off the tenants who have improved the land, without giving them any compensation.

MR. S. M. HOPKINS for the defendants. Mr. Cady was to have argued on the same side, and Mr. Hopkins expressed his particular obligations to Mr. Cady for the perusal of his brief.

1. This is a bill at law; it regards a legal estate, and a legal question, only; it has no ingredient of equitable jurisdiction.

2. Farther, it is to reverse a rule of law; to declare that estate vested, which, at law, never did vest; and that deed absolute, which, at law, was an escrow.

3. If the execution was perfect, and if the acknowledgment imports delivery, as is argued, then the complainant's estate was perfect at law. In that point of view, it is a bill for a new trial.

4. As an escrow, it is now too late for the deed to be ever made good, the grantor being dead; and the default on the other part, was flagrant, wilful, and with perfect notice, long before his death.

5. The complainant has his deed; then what does he come into equity for? Is it to pay us money? But if he has obtained the deed, by indirect means, and, without making the payment, which he knew to be due, it is still no case of trust, accident or fraud, except his own fraud.

6. In 1795, this deed was delivered by Edwards to Haines, as an escrow in precise terms, and to be delivered absolutely to Curtiss on the payment of certain instalments, the last of which fell due in 1797; and which was never paid. In 1798, Curtiss, without obtaining the deed to himself, made a conveyance to the complainant; and the complainant afterwards, fraudulently got the first deed out of the hands of Haines, to perfect his title.

The interest then, which Curtiss had, when he so convey- 1825.
ed to the complainant, was ŕ mere possibility and so not as-
signable. Shep. Touch. 2 ,8. 239. "Albeit" says Shep-
pard, p. 59. "he get it into his hands, before the condition
"performed, yet he can make no use of it at all, neither will
"it do him any good."

In Jackson v. Catlin, 2 John. 248. the court decided, that
such a deed conveyed nothing. "No interest whatever in
"the premises vested," said Ch. J. Kent. "He had not
"even a "scintilla juris." "A mere possibility is not the
"subject of a grant." S. C. 8 John. 551. affirmed in error.

It is no more devisable by will, than it is grantable by deed.
Shep. Touch. 414. & 431. Perk. sec. 520. & 521.

But it is descendible. 10 Mod. 423. See also 5 Co. 24. b.
10 Co. 51 a. Dyer 244. a.

7. We are not bound to accept performance from a stran-
ger. This results from the last point, and is an illustration of it.

8. This deed was delivered to a third person, to be deliver-
ed absolutely, on the performance of a precedent condition;
and for the nonperformance of a precedent condition, there
can be no relief, except in some peculiar cases, such as the
act of God, or the fraud of the party. As in 1 Vern. 222.
In Popham v. Bamfield. 1 Vern. 82. the Lord Chancellor
says, "precedent conditions must be literally performed, and
"this court will never vest an estate, which, by reason of
"such nonperformance, did not vest at law." And in Lord
Falkland v. Bertie, 2 Vern. 333. 3 ch. ca. 189. Holt Ch. J.
said, "a court of equity may relieve, to prevent a divesting
"of an estate, but can not relieve, to give an estate which
"never vested." Sweet v. Anderson 2 Bro. P. C. 256.
"equity will not relieve against conditions precedent." The
cases 2 Vern. 259. 1 Bro. Ch. C. 168. 14 Ves. 341. Finch
447. 2 Vern. 222. 3 Ves. 690. are to the same effect; and
in 1 Mad. ch. 35. 36. 37. they are summed up by saying,
"conditions precedent can not be relieved against."

"At law, that which is granted or reserved under a certain
"form, is never drawn into compensation, for the law allows
"every man to part, with his own interest as he pleases." 1
Fonb. Eq. 389. ch. VI. s. 4.

But the present bill tends to subvert the great principle just cited. Is it unlawful to make an escrow? May not a cautious man withhold all title to land, till he gets payment? and if the parties intentionally so stipulate, can the court set aside that contract?

It is said, this is an indefinite deposite. Then they have no occasion to come into equity; for a tender at law, would vest the right in them.

The cases cited against us, such as, 2 Vern. 366. 1 Salk. 156. and others, will be found, to be only, on conditions subsequent, or on cases considered as such, because there was no limitation over. The case in 14 Ves. in effect overrules the doctrine so much relied upon in 2 Freem. 9.

The ancient cases which have been chronologically examined on the other side, are curious, to show how lately our system of forensic equity sprang up, and how crude were the notions of great men, 150 years ago. " I wonder" said Lord Ch. J. Vaughan, in one of those cases, " to hear of citing prece-" dents in matter of equity." 1 Mod. Rep. p. 307. Yet even the great majority of those cases are against the positions of the complainant.

9. This is a case of great demerit on the part of the complainant. Curtiss when in jail, told him, the deed was lodged with Haines, as security, and this appears from his own bill. After knowing this, he makes various attempts to get up the deed surreptitiously, and finally succeeds. He rejected for many years, an offer of the equity he now seeks; he challenged us to resort to law; at law he set up and insisted on his present claim, till there finally decided against him. He now props his claims upon the fair offers we made him, and which he rejected, so long as he supposed the power was in his own hands.

If the complainant is now to be allowed to complete this purchase, upon the original terms, it amounts to giving him for 30 years, the option of purchasing, or not purchasing new lands, at the original price, for we had never any hold upon him: he had but to wait his own time; to refuse payment when we asked it, and to insist on paying, only when the object, already immensely advantageous, could be had without inconvenience.

'This is res judicata; but not so by some remote intendment, such as in many cases is urged. The very point, directly in issue, has been fully discussed at law. At law this deed has been decided between these very parties to be an escrow; and the complainant comes into equity, to have it decided not to be an escrow. Pulver v. Pulver in error 1822. MS.

Here the party applies after a lapse of 25 years. Time may be of the essence of a contract; but lapse of time, as such, is never pleaded. 1 John. ch. 370. 3 John. ca. 60. and after such a lapse of time, relief was never granted in like circumstances.

He has trifled with the contract. 4 John. ch. 559. He has been guilty of a wilful voluntary breach of it. 1 Mad. ch. 32. 18 Ves. 64. 406. He should show himself ready, prompt and eager. 1 Mad. ch. 328. 331. 5 Ves. 720, note. 4 Bro. C. C. 329.

The misstatement of his case in the bill is flagrant and manifestly wilful.

Neither can he be relieved, when coming with unclean hands.

Never was there a case which sought to overturn more of the fundamental principles of equity, and of common justice.

MR. HENRY, in reply, went very fully into an examination of the authorities cited for the defendants.

A possibility is assignable if coupled with an interest. Here was an agreement executed; part was paid; notes given for the residue.

An escrow must be on a condition expressed. 4 Cruise Dig. 30. tit. deed 32. sec. 57. It must be delivered conditionally: and here is no proof of a strict agreement that it should be a forfeiture if not paid. But if an escrow, the party might yet perform the condition. 5 Viner Ab. T. 3. Pl. 3. and the death of the grantor makes no difference.

As to the trial at law; it was an ejectment which even at law is not conclusive: how much less so in equity. 1 Esp. N. P. 437. 1 Root 232.

It appears by Raithley's edition of Vernon, that the case of Popham v. Bamfield so much relied on, upon the other side, was reversed in the House of Lords.

In this case it appears by the pleadings, that we made a full offer of indemnity to the defendants, before this suit was brought.

1825.
14th January.

THE CHANCELLOR. The contract between John Edwards Junior and Edmund Curtiss Junior, was a contract for the sale and purchase of land. It was in substance, the ordinary contract between the vendor and the purchaser, where the purchaser pays a part of the price, and it is agreed, that the title shall remain in the vendor, as a security for the unpaid balance of the price. Such contracts are enforced in equity, according to the intentions of the parties. Courts of equity, not resting upon the forms and unessential parts of agreements, seize the sense and intention of the parties, and carry their intended objects into full effect. Upon this great principle of giving effect to contracts, according to their spirit and the intentions of the parties, rests a great portion of the jurisdiction of this court; and especially, the whole doctrine of mortgages, that of the specific performance of agreements, and the relief given against penalties and forfeitures. It is a jurisdiction, not to make or to vary contracts, but to carry them into effect, and to do substantial justice between the parties, by measures and methods of relief, which the courts of law do not afford.

If the substance of this contract is regarded, it seems abundantly clear, that the real object of Edwards and Curtiss, in agreeing that the deed from Edwards, should be placed in the hands of Haines, was, that it should be held as a security for the unpaid balance of the price of the land. This is the sense and substance of the allegations of the parties, and of all the testimony. Was this deed to be delivered to the purchaser of the land, or not, according to the pleasure of Edwards, the vendor? Was it in his option, whether this contract should be consummated, or not? Was Edwards at liberty, to proceed in the contract or not, at his pleasure? Could he retain the portion of the price, which he had received, and refuse to complete the contract? These questions must be answered in the negative; and Curtiss by this contract and its partial performance on his part, acquir-

ed perfect rights, which must be protected in equity.  This
transaction then, though in form different from a mortgage,
was in effect, a contract of the same nature.  The contract
was perfect; and the object of retaining the deed as it was
retained, was, to secure a part of the price of the land sold.
It was the right of Curtiss, to receive a title to the land from
Edwards, on payment of the portion of the price which re-
mained unpaid.  This was a perfect right in Curtiss; it has
passed to the complainant; and it is the foundation of this
suit.  These principles and this brief view of the case, seem
sufficient to decide, that the complainant is entitled to relief.

The defendants insist, that this deed was merely an escrow,
and that it was never delivered, as a deed.  If this were so,
the equitable rights of these parties, would not be varied.
The deed was only one part in a series of transactions be-
tween Edwards and Curtiss.  The contract for the sale and
purchase of the land, was the foundation of the whole.  The
payment of a part of the price and the promissory notes giv-
en for the residue by Curtiss, on one side, and the deposite of
the deed by Edwards, on the other, were steps in the subse-
quent performance of the contract.  These acts can not be
disjoined from each other, or from the contract on which they
were founded, when the rights of these parties are to be de-
cided by principles of equity.  But this deed was not an es-
crow, in any sense of that term, which may import, that the
instrument might be delivered or withheld, at the pleasure of
the grantor, and without any right in the grantee to the de-
livery.  It was prepared in pursuance of a previous contract.
It had been executed and acknowledged; it was placed in the
hands of Haines, to be held by him, until the balance of the
price should be paid, or until satisfactory security for the pay-
ment of the two promissory notes, should be given.  The de-
posite of the deed with Haines, was made by agreement be-
tween the parties; and was obviously, a method adopted by
them, to secure the balance of the price, due to Edwards.
The judgment of equity upon the whole case, must be, that
Curtiss had a right to the delivery of the deed, when the con-
dition, upon which it was agreed to be delivered, should be
substantially, performed.

1825.

LEGGETT
v.
EDWARDS.

The rights of these parties were substantially, the same, as they would have been, if no deed had been prepared, and it had been agreed, that upon payment of the balance of the price by Curtiss at the appointed time, Edwards should give a conveyance. In either case, the essence of the contract would be, that upon payment of the remaining debt to the vendor, he should convey a title to the purchaser.

The balance of the price was to be paid by Curtiss, within a short time, or before either of the two notes should become payable; and he was then to receive the deed from Haines. Curtiss did not make payment, within the time limited; and Haines did not deliver the deed. It is a rule of equity, that where time is not of the essence of a contract, and just compensation may be made for delay, the party omitting to perform, at the time appointed, shall not forfeit his rights, but shall have relief, upon terms of indemnity to the other party. This rule is particularly applicable to cases in which the object of a penalty or forfeiture, is to secure the payment of a debt. In such cases, though the debtor does not pay the debt at the stipulated time, he is relieved from the forfeiture, upon making a just compensation to the creditor; and this indemnity is generally, interest upon the debt; interest being considered an equivalent for delay of payment. These principles of equity are illustrated and applied in the ordinary case of a bond and a mortgage, to secure the payment of money. The bond binds the debtor in a penalty, for payment, on a certain day; and the mortgage by its terms, conveys an estate which becomes absolute in the mortgagee, if payment is not made at the appointed time. But equity considers both the penalty and the time of payment, as matters not of the essence of the contract; treats the whole transaction as a mere security for a debt; and allows the debtor to discharge his debt with interest, after the stipulated time for payment. In the case now before the court, the condition to be performed within the limited time, was the payment of money, for which Curtiss had given his promissory notes. Was the time appointed for this payment, an essential part of the contract? I can not perceive, that

the time limited for payment by these parties, was a more essential part of their contract, than the time for payment, appointed by any ordinary mortgage. If security to the creditor, was the great object of these parties, the time appointed for payment, was material to this creditor, only as it is material to other creditors, in like cases. I am sensible of the justness and force of the views advanced by the late chancellor, in the case of Benedict against Lynch, 1 Johns. ch. 370 : and I fully concur in the opinion, that in agreements for the sale of land, the time of performance, may be an essential condition of the contract. But here was no agreement, that if payment should not be made by Curtiss, at the appointed time, the contract of the parties should be rescinded ; no stipulation, that the portion of the price which was paid by Curtiss to Edwards, should be either forfeited to Edwards, or be returned to Curtis ; and no agreement, that the promissory notes given by Curtiss for the balance of the price, should not be enforced. The deed was retained in the hands of Haines, merely as a security for the payment of the promissory notes ; and the transaction though not a mortgage in form, was a mortgage in effect, and is subject to the equitable principles which govern mortgages. The case in respect to the time of payment, is exactly analogous to the ordinary case, where the mortgagor does not pay the mortgage debt at the stipulated time, and is nevertheless, allowed to redeem the land. Curtiss had paid about two thirds of the price of the land, and had given his promissory notes for the residue ; and to say, that because he failed to pay the residue, within the stipulated time, he lost both the land and the price, would be foreign to the true sense of the contract, and repugnant to equity.

The acts of the parties throughout, afford evidence, that they regarded the deposite of the deed with Haines, as a measure intended and operating, merely to secure payment of the balance due to Edwards. The price of the land was five hundred and twelve pounds ; of which sum, one hundred and sixty pounds, being the amount of the two notes, remained unpaid. Partial payments were afterwards made by Curtiss and received by Edwards, and receipts were indorsed on

one of the notes. In 1799, after both notes were payable, Edwards offered to deliver the deed, on payment of the a- mount then due on the two notes. His representatives after his death, offered to accept payment. These offers made af- ter the failure by Curtiss to make payment within the stipula- ted time, prove decisively, that the parties considered and treated each other, as still standing in the relation of debtor and creditor, and that no forfeiture was claimed, on the part of Edwards.

There has been great delay, on the part of the defendants, in asserting their claim, and on the part of the complainant, in seeking equitable relief. But these delays seem to have arisen from the peculiar circumstances of the case ; and they are so far explained and accounted for, that they do not, I think, preclude either of these parties from any of their equi- table rights. The conduct of the complainant, in procuring the deed which had been deposited with Haines, without pay- ment of the debt justly due, was immoral and reprehensible: but he can gain no advantage by this culpable act; and it can not deprive him of the rights which he had previously acquired, by his purchase from Curtiss.

Upon the whole case, I am of opinion, that the complain- ant is entitled to the land in question, upon the basis of the contract between Edwards and Curtis, and upon terms of equitable indemnity to the defendants. These terms must be, the payment of the principle remaining due on the origi- nal contract, and interest upon it, and also, all expenses which the defendants have incurred in this suit and in the prosecu- tion of their claim at law. The circumstances of this case, render it equitable, that the complainant should pay to the defendants, not only their legal costs, but all reasonable ex- penses of every kind, which the litigation has imposed on the defendants. (a)

(a) The following is the form of the decretal order entered in this cause.

This cause having been heard upon the pleadings and proofs, and having been argued by Mr. HENRY of counsel for the complainant, and by Mr. HOP- KINS of counsel for the defendants, and due deliberation having been there- upon had, it is declared by the chancellor, that the said complainant is enti- tled to relief touching the matters in the pleadings mentioned upon equitable terms. Whereupon in order to give such relief, it is ordered that it be refer-

red to one of the masters of this court to ascertain and report what sum is due for principal and interest on the two several promissory notes for eighty pounds each, given by Edmund Curtiss Junior to John Edwards Junior, mentioned in the pleadings and proofs in this cause, being in part of, and on account of the price of five hundred and twelve pounds agreed to be paid by Edmund Curtiss Junior mentioned in the pleadings, on the purchase of the lands in the pleadings mentioned from John Edwards Junior also in the pleadings mentioned, according to the contract in that behalf between the said John Edwards Junior and Edmund Curtiss Junior mentioned in the pleadings aforesaid, the residue of such price having been admitted or proved to have been paid, and also the amount of the taxable costs of the said defendants in this suit, and also their taxed costs in the several actions of ejectment brought in the supreme court for the recovery of the possession of the said lands also in the pleadings mentioned, and also the amount of all reasonable expenses, beside taxable costs as aforesaid, which have been paid or incurred by the said defendants, both in the prosecution of the several actions of ejectment aforesaid and in the defence of this suit, and report the same to this court, with all convenient speed. And it is further adjudged and decreed, that when the master shall have so made his report, ascertaining the amount of the principal, interest, costs and other reasonable expenses aforesaid, and the said report shall have been confirmed, the said complainant may within twenty days after the confirmation of such report, pay or tender to the said defendants, or their solicitor in this cause or in case of refusal to receive the same, pay to the register or assistant register of this court for the use of the defendants, the amount of the said principal, interest, costs and other reasonable expenses so ascertained by such report. And it is further adjudged and decreed that upon such payment being made, the deed from John Edwards Junior to Edmund Curtiss Junior, of the twenty third day of May in the year of our Lord one thousand seven hundred and ninety six, mentioned in the pleadings in this cause in the premises described in the said deed and pleadings, shall from thenceforth be, and be deemed and taken, an absolute deed of conveyance, and to have vested an absolute estate of inheritance in the same premises in the said Edmund Curtiss Junior, his heirs and assigns forever. And further, that upon such payment, the injunction issued in this cause be and the same is hereby made perpetual, and the defendants in this cause respectively be, and they respectively are, hereby perpetually enjoined and restrained from setting up any estate or title whatsoever, in or to the said premises, or any part thereof, and from all actions and proceedings at law touching the said premises, or any part thereof, or for the recovery thereof, or of any part thereof. And this decree is to be binding upon the infant defendants Marina Edwards, Eliza Edwards, Henry Edwards and Jane Edwards respectively, unless they respectively shall, within six months, after they shall respectively attain the age of twenty one years being served with process for that purpose show unto the court good cause to the contrary: Provided however, and it is farther adjudged and decreed that in case the said complainant shall not within twenty days from the confirmation of the said report make such payment of the amount which shall so be ascertained and reported as aforesaid, the said complainant's bill of complaint in this cause, shall stand and be dismissed with costs to the defendants to be taxed, and that the defendants thereupon have execution therefor &c.