MARIA J. MYRES *v.* JUAN C. DEMIER.

A court of equity may enforce specific performance of a contract to sell land, although the land is situated in another State, and the contract was made and to be performed there, if the defendant was duly served and subjected to the jurisdiction of the court.

A party wishing to rescind a contract on the ground of a failure to perform at the time fixed by the contract, must show either, 1. That time was originally of the essence of the contract; or, 2. That it was engrafted into it by subsequent notice; or, 3. That the delay has been so great as to constitute laches.

Under a contract to sell property which provided for a delivery of a deed at a specified time, but contained no other stipulation showing any intention to make performance on that day essential, but provided that in a certain contingency the deed might be delivered after that date, *Held*, that time was not of the essence of the contract.

The subsequent notice required to make time of the essence of the contract, must be express, distinct, and unequivocal.

The question as to what will amount to such notice, in a particular case, considered.

APPEAL by plaintiff from a judgment entered on the decision of a judge at special term. The judge, at the trial, found as matters of fact, that about December 3d, 1869, Austin Myres (plaintiff's testator) and the defendant were the owners of the New Jersey Arms and Ordnance Company at Trenton, New Jersey, the defendant owning nine-sixteenths and Myres seven-sixteenths. On that day they entered into a contract, by which Myres agreed to sell his interest to the defendant for $55,000, to be paid as follows: $4,000 in cash, $6,000 on delivery of the deed, and the remainder, or $45,000, to be secured by bond and mortgage, the mortgages to run three years, and the interest to be payable semi-annually in New York, to be further secured by the assignment of policies of insurance on said property, for the sum of $25,000. The deed was to be delivered Feb. 1, 1870, or as soon as it could be done after the return of Myres from Europe. In case the deed was not delivered by Myres at the time aforesaid, it was pro-

vided that defendant might sell the personal property upon payment of the $6,000. Contemporaneously with the making of the agreement, Myres wrote to the defendant a letter, saying that he was going to Europe, to be gone about two months, and that in case the defendant could dispose of the machinery at Trenton before Myres' return, he might do so, the same as if he had paid the $6,000.

Under this contract, defendant having paid the $4,000 in cash, went into and retained possession of the property.

On the return of Myres from Europe, Jan. 18th, 1870, the defendant paid him the further sum of $6,000 provided for in the contract.

No deed was tendered the defendant until February 27th, 1870, when a deed of bargain and sale with a covenant against the grantor's own acts was offered the defendant, whereupon the defendant claimed that the conveyance required by the contract should contain certain covenants of seizin, quiet possession, and fuller assurance of title, and a surrender of certain bonds of The Trenton Locomotive and Machine Manufacturing Company. The difference existing between them as to the requirements of the contract, and as to the covenants to be contained in the deed of a conveyance, continued as matter of dispute until March 11th, 1870, when a written notice from Myres to the defendant (dated March 10, 1870) was received by the defendant, in which Myres stated that, having been informed that defendant declined to accept the deed, and give the mortgage according to the contract, if the defendant did not do so at once, he (Myres) would be obliged to take steps to enforce the agreement of December 3d, 1869.

A number of the bonds of The Trenton Locomotive and Machine Manufacturing Company, through whom the title of said parties was derived, eight of which were held by the Ocean Bank, of the city of New York, and some others by Myres, remained outstanding and unsatisfied, which had been secured by a mortgage on the premises, dated April 1, 1856, executed by said corporation to Joseph B. Brearly, Trustee; and said premises had been also subject to another mortgage, executed by the New Jersey Arms and Ordnance Company,

remaining unsatisfied of record, but the title acquired to said premises and property, by said Myres and defendant, in and through a deed or conveyance thereof from Edward J. C. Atterbury, a receiver of the last-mentioned company, dated October 31st, 1867, made and executed under and by virtue of the Court of Chancery of the State of New Jersey, conveyed said property free and clear of all incumbrances and liens whatsoever. And the objections made by the defendant to the title of said Myres, by reason of said bond and mortgages, were not sustained by any proof of the existence of any such defect therein.

The action was commenced on March 24th, 1870, by summons for relief and a complaint by Austin Myres (plaintiff's testator), setting forth in substance his ownership as aforesaid, the contract aforesaid with the defendant, the payment of said sums of $4,000 and $6,000 on account thereof; that defendant, under said contract, had gone into possession of the property so agreed to be sold him; the tender of the deed aforesaid and demand of the bond and mortgage of $45,000, and continued neglect and refusal of the defendant to accept the deed and deliver the bond and mortgage, or to carry out or perform the contract on his part; but that he repudiated and claimed to rescind the same on his (defendant's) part; that since such refusal he (defendant) had negotiated a sale of the personal property (fixtures and machines), and had entered into contract for its sale and delivery (including the interest of said Austin Myres) to the Turkish Government, and had delivered a portion thereof and received a part of the purchase money, and was engaged in the removal thereof beyond the jurisdiction of this court.

That such contract was in violation of his (said Myres) rights in the property, and such removal would result in irreparable injury, and he prayed for an order of injunction restraining the removal of any of said property from the factory or premises aforesaid, or bringing it into the State of New York, or from the selling or delivering the same, or any part thereof, to any government, corporation or individual, and that defendant account for the proceeds of said property.

After the commencement of this action and before an-

swer, to wit, on April 4th, 1870, the defendant tendered the bond and mortgage and policies of insurance mentioned in said contract to said Austin Myres, but he refused to accept the same.

Prior to the commencement of this action, and about March 23d, 1870, the defendant had sold and delivered to the Turkish Government all the personal property referred to in said contract, for the sum of $68,000, and had received the consideration money therefor.

That the claim of the defendant for the additional covenants in the conveyance to be executed under said contract, and for the surrender of said bonds, was made in good faith and under advice of counsel; that no substantial injury occurred to said Myres from defendant's default to accept said deed when tendered on the 27th day of February, 1870, and executing the bond and mortgage specified in said contract of December 3d, 1869.

That the tender of such bond and mortgage with accompanying policies of insurance, as made on the 4th of April, 1870, if accepted, would have substantially secured to the said Austin Myres all the benefits conferred by the said contract.

That defendant, by assurances given him during the progress of the negotiation for said sale by said Austin Myres, had reason for believing that the said bonds of said Trenton Locomotive and Machine Manufacturing Company, held by said Ocean Bank and said Austin Myres, would be surrendered to him.

He also found as matters of law:

That no such delay occurred in the completion of said contract, by or on the part of the defendant, as called for a judgment forfeiting his rights under the same as purchaser in possession of the property agreed to be sold to him, or from requiring a specific performance thereof.

That said Austin Myres, previous to the commencement of this action, gave no notice of, nor claimed any rescission of said contract, or of any desire or intention to do so.

That the original complaint was not for any such rescission.

That the tender of performance, made on the 4th of April,

1870, before answer, was complete as to all his legal or equitable demands of the plaintiff.

That specific performance of said contract, by the plaintiff prayed for in the answer, ought to be decreed, but by reason of the delay in the tender of the bond, mortgages and policies of insurance, without costs.

*D. Pratt*, for appellant.

The defendant, by his failure to perform the contract on his part after time had been made material by the other party, has, by the well-settled rules of courts of equity, forfeited the contract and all rights under it.

1. It is not claimed that, generally, time is the essence of a contract for the sale of land, but it is submitted that it is competent for the parties to such a contract to make it so, and when the contract is for the sale of personal as well as real property, time is generally essential (Parsons on Cont. pp. 344, 543; Story's Equity, § 776).

2. But in this case it is manifest, from the nature and condition of the property, and the provision for the sale of the personalty by DeMier in certain contingencies, that the parties contemplated a prompt execution of the contract at the time therein specified (*Gale* v. *Archer*, 42 Barb. 320; *Hepwell* v. *Knight*, 1 Young & C. 415; Hoffman Ch. R. 125). (*a.*) Instead of such prompt execution on the part of the defendant, his whole conduct shows a determination on his part to embarrass Myres, if not the design to evade an honest performance of it. (*b.*) Indeed, it looks much as though DeMier desired a delay until he could make sure of the sale of the personalty and the receipt of the money, and if he should fail in that speculation to abandon the contract.

3. At all events, after repeated efforts to induce defendant to accept a conveyance and execute back his bond and mortgage, Myres had the right to appoint a time beyond which there should be no further delay. Such time was appointed by Johnson on the part of Myres, and assented to by DeMier. (*a.*) That such a time was fixed DeMier does not deny. (*b.*) Nor

does he deny but that Johnson was ready at the time appointed, and he was not ready. (c.) Nor does he pretend to render any excuse for not being ready.

4. Time, therefore, by this appointment became material, and the refusal of DeMier to perform on his part, worked a forfeiture of the contract (*Wiswall* v. *McGown*, 2 Barb. 270; *Friess* v. *Rider*, 24 N. Y. 367; *Benedict* v. *Lynch*, 1 Johns. Ch. 375).

5. Again, as DeMier was in default, he was clearly bound to act promptly upon receiving Myres' letter of March 10th. That was a direct notice that delay on his part would be tolerated no longer (2 Story's Eq. § 776). (a.) It is not material that Myres threatened in that letter that, in case of further neglect, he should take measures to compel performance. (b.) It was a notice that he should consider any further delay a breach of the contract. Such breach on defendant's part gave Myres his election to rescind or compel performance. (c.) Defendant comes with an ill grace, claiming that he could utterly disregard the warnings in that letter, and at the same time retain all his rights under the contract.

6. At all events, the commencement of the action on the 24th day of March, was an unmistakable notice to DeMier of an intention on the part of Myres to rescind, and he was certainly bound to act promptly and efficiently from that time. Allowing ten days to elapse before any offer to perform, was not prompt action. (a.) A party guilty of default, who asks specific performance, must show that he has been ready, desirous, prompt, and eager to perform the contract (2 Story Eq. Jur. § 776; 5 Ves. 720, note; 13 Id. 228; 1 Ball & Beat. 68; 4 Peter, 311). (b.) There is no excuse given for the delay on the part of the defendant, and especially after he was notified that delay would no longer be tolerated. (c.) The delay was therefore manifestly intentional and wilful, and the court will never relieve against wilful laches (3 Ves. 690, 695, note 2).

*Chas. Tracy*, for respondent.

BY THE COURT.*—LARREMORE, J.—Prior to December 3d,

---

* Present, VAN BRUNT, LARREMORE and J. F. DALY, JJ.

1869, plaintiff's testator and the defendant were the owners of certain real estate and personal property at Trenton, N. J.   On that day, the said owners .entered into a contract whereby Myres agreed to sell his said interest (being $\frac{7}{16}$) to the defendant, for $55,000, to be paid as follows : $4,000 on the execution of the contract, $6,000 on delivery of the deed, and the balance, $45,000, to be secured by a bond and mortgage upon the property and policies of insurance to the amount of $25,000.   " The deed to be delivered February 1st, 1870, or as soon as it may be done after the return of the party of the first part (Myres) from Europe; and in case said deed is not delivered by said Myres at the time aforesaid, said DeMier may sell and dispose of the personal property upon payment of $6,000, in addition to the $4,000 paid this day to said Myres or his agent duly authorized to receive the same."   Myres returned from Europe before February 1st, 1870, and the second cash instalment of $6,000 was paid before the delivery of the deed, and on January 18th, 1870, as shown by the receipt.

Plaintiff claims that a proper deed was tendered to defendant on February 1st, 1870, and also at a subsequent date agreed upon by the parties, which deed defendant refused to accept. That by such refusal (after notice to close the sale by the time specified) defendant had forfeited his rights under said contract, and that plaintiff was entitled to a rescission thereof.

The learned justice who tried the cause has found, as matters of fact, that no such deed as was required by said contract was tendered the defendant, until on or about February 27th, 1870, and that differences existed between the parties as to the form and character of said deed, and continued as a matter of dispute until March 11th, 1870, when defendant received a written notice from Myres, dated March 10th, 1870, that he would be obliged to take steps to enforce the agreement, unless defendant would accept the deed, &c.   That defendant, under said contract, entered into and has ever since continued in possession of the rights and interests in said real and personal property, and that on or before March 23d, 1870, he had sold and delivered all the personal property, referred to in said contract, to the Turkish Government for the sum of $68,000, and

had received the consideration money therefor. That this action was commenced March 24th, 1870, by the plaintiff's testator, praying for an injunction restraining defendant from selling, delivering, or removing said property, and for an accounting of the proceeds thereof. That after the commencement of this action, and before answer, to wit, on April 4th, 1870, the defendant tendered the bond and mortgage and policies mentioned in said contract, which Myres refused to accept. These facts fairly present the questions raised on the argument of the appeal.

That the court had jurisdiction of the action is settled by the case of *Newton* v. *Bronson* (13 N. Y. 587), which holds that a court of equity may enforce specific performance, although the lands are in another State, and the contract was made and to be performed there, if the defendant was duly served and subjected to jurisdiction.

The point upon which the case turns, is whether or not time was made essential to the performance of the contract. In order to sustain the affirmative of this proposition, it must appear, 1st, that time was originally of the essence of the contract; or 2d, that it was ingrafted into it by subsequent notice; or 3d, that the delay was so great as to constitute laches.

The contract in suit specified February 1st, 1870, for its performance, but contained no other stipulation showing any intention to make performance on that day essential. By its very terms, it contemplated and provided for a contingency, by which the deed might be delivered after that date. Time was not therefore originally of the essence of the contract (*Hearns* v. *Tenant*, 13 Ves. 287; *Roberts* v. *Berry*, 16 Beav. 31; *Parkin* v. *Thorold*, Id. 59; *Leggett* v. *Edwards*, 1 Hopk. Ch. 530; *Edgerton* v. *Peckham*, 11 Paige, 352).

Did it become essential by subsequent notice?

This is a question of evidence (*Levy* v. *Linds*, 3 Mer. 81), and the justice has found as a conclusion of law that, previous to the commencement of the action, plaintiff's testator gave no notice of, nor claimed any rescission of said contract, or of any desire or intention to do so. He has also found that there was

no such delay by or on the part of the defendant as called for a judgment of forfeiture against him.

If these findings are supported by competent evidence, the decision ought not to be disturbed, unless it appears that gross error has been committed, or great injustice done.

The plaintiff seeks a forfeiture of the contract under which defendant entered into possession of the premises, and upon which he has paid the sum of $10,000. There has been a part performance by him, and nothing remains to render it complete but the delivery of the bond and mortgage and policies called for by said contract. Under such circumstances it is eminently just that plaintiff should be held to strict proof of the facts that warrant a forfeiture.

Did Myres give such a notice of his intention to rescind the contract as made time essential to its performance? The testimony of Johnson upon this point was, that previous to March 10th, 1870, he informed defendant that he (Johnson) would come down on the day named with all the papers ready to close the sale, and that if upon that occasion defendant wasn't ready, it was the last time he would come; that he (Johnson) had been dancing attendance upon defendant for the last two months, and should refuse to do it any longer.

This was not a sufficient notice to rescind the contract. Such intention was not expressed in it. The notice required must be express, distinct, and unequivocal (Fry on Spec. Per. § 728, and cases there cited).

It was held, in *Reynolds* v. *Nelson* (6 Mad. 18), that where one party informed the other that non-payment by a day certain would be considered as equivalent to a refusal to perform, this did not amount to a notice that the contract would then be considered as rescinded. On March 10th, 1870, Myres wrote defendant that he had been informed by Johnson that defendant declined to perform the agreement, and then adds, "if you do not do so at once, I shall be obliged to take steps to *enforce* the agreement, which I dislike very much to do, as I am tired of lawsuits."

It will not, I think, be seriously contended that Myres' expressed intention on March 10th, 1870, to *enforce* the agree-

ment, is consistent with the theory that it had been previously rescinded.

But even if time had been made essential to the performance, this might be and was waived by the conduct of Myres (*Benedict* v. *Lynch*, 1 Johns. Ch. 370 ; *More* v. *Smedburgh*, 8 Paige, 600, affirmed in 26 Wend. 238; *King* v. *Wilson*, 6 Beav. 124).

Myres' letter of March 10th, 1870, treated the contract as still subsisting, and this gave defendant a right to ask for specific performance (*Burgett* v. *Bissell*, 14 Barb. 638).

The authorities upon which the appellant's counsel relies, do not, in my judgment, meet the merits of this action.

In *Gale* v. *Archer* (42 Barb. 320), it was the peculiar nature of the contract that made time essential, and the court so stated.

*Wiswall* v. *McGown* (1 Hoff. Ch. 125), holds that the notice to rescind should fix a day for performance, and the time should be reasonable. But the justice has found as a fact that no such notice was given prior to defendant's offer to perform.

*Friess* v. *Rider* (24 N. Y. 367) was an action at law upon a contract for sale of real estate, to recover stipulated damages by reason of the vendor's failure to perform at the time, &c. In such actions time is always essential.

*Wiswall* v. *McGown* (2 Barb. 270) holds that a new agreement extending the time for performance is evidence that the parties deemed the time material; but no excuse was offered for the failure to perform on the day named.

Taking into consideration the fact that this action was not commenced to rescind the contract, but that such relief was sought by amendment of the proceedings after defendant had made a tender and offer to perform on his part, and also the fact, that said contract can be carried out according to its terms, I think the judgment rendered was fully authorized by the evidence, and should be sustained.

Judgment affirmed.