## SUPREME COURT.

THE NEW YORK LIFE INSURANCE AND TRUST COMPANY, as trustee of JULIA A. LIVINGSTON, &c., agt. THE RECTOR, CHURCH WARDENS AND VESTRYMEN OF ST. GEORGE'S CHURCH in Flushing.

*Lease for term of years with covenants of renewal — Option of — When delay in expressing option does not constitute laches — Honest mistake or ignorance of facts is good ground for equitable interference.*

Where plaintiff, the assignee of a long lease containing a covenant to renew, who omitted by accident or mistake to give notice of his option until thirty-six days after the contract time, sued to be relieved from a forfeiture of the lease, and it appeared that, prior to the alleged forfeiture, he had a vested interest in the property, to the extent at least of $30,000, and plaintiff continued in possession, and defendant received the rent after the expiration of the term:

*Held*, that as time was not originally of the essence of the contract, and was not engrafted into it by subsequent notice, and the delay on plaintiff's part in expressing the option was not so great as to constitute laches, the plaintiff is entitled to judgment, requiring defendant to execute a renewal of the lease.

*Special Term, February*, 1883.

ON December 30, 1818, the defendants executed and delivered to James Boggs a lease of the lot of land now known as No. 116 Chambers street, in the city of New York, for the term of sixty-three years, to commence September 25, 1818, at an annual ground rent of $150, payable half yearly, on the twenty-fifth days of March and September in each year during the term.

The lease was recorded in the office of the register of the city and county of New York, February 10, 1819, in liber 134 of conveyances, page 306, and containing covenants on the part of the lessor to grant a renewal thereof for a further term of twenty-one years, upon receiving notice in writing from the lessee prior to September 25, 1881, of his intention

to renew, and in case renewal was not required, the lessee was allowed twenty days after the expiration of the term to remove the buildings standing on the demised premises.

The plaintiff, as trustee, has acquired and now owns the legal title and interest of the original lessee, and is now in possession (through its tenants) of the premises, upon which buildings have been erected which are now worth $30,000.

The term of sixty-three years reserved in the lease expired September 25, 1881, without notice from the plaintiff of its intention to renew.

On October 17, 1881, the defendant received the six months' ground rent of the premises up to September 25, 1881.

On November 1, 1881, the plaintiff gave notice in writing of its election to renew the lease, and therein stated that such notice was not given prior to September 25, 1881, because the plaintiff had been misled as to the time when the lease expired. To this notice the defendant made reply that the lease was at an end; and no renewal thereof would be given.

Whereupon this action was commenced to relieve the plaintiff from a forfeiture of the lease, and for a judgment declaring its covenants still in force, and that the defendant execute a renewal thereof in pursuance of its terms.

*Joseph H. Choate* and *Betts, Emmet & Robinson*, for plaintiff.

*John H. Wilson*, for defendant.

LARREMORE, *J.* — The defendant's counsel struck the key-note of this controversy in anticipating plaintiff's position — that generous dealing by a religious incorporation with a trustee of an express trust, would be expected and enforced.

Prior to 1880 neither party had a copy of the lease. The only papers then in plaintiff's possession were the assignment, dated December 2, 1873, and defendant's consent thereto, dated December 20, 1873, both of which refer to the date of

the lease (December 30, 1818), but not to the commencement of the term thereby granted (September 25, 1818).

The plaintiff was evidently misled by the recital in the assignment into the belief that the lease did not expire until December 30, 1881.

In the absence of any express intention on its part, it cannot be reasonably presumed that the plaintiff would knowingly surrender so valuable an interest as it had in this lease without adequate compensation. Neither should its honest mistake of a fact, under all the circumstances, be regarded as laches.

Without any imputation of unfairness on the part of the defendant, the acts and statements of its collector were calculated to mislead the plaintiff as to the date of the expiration of the lease.

Time was not originally of the essence of the contract. It was not engrafted into it by subsequent notice, and the delay on plaintiff's part in expressing its option was not so great as to constitute laches (*Myres* agt. *De Mier*, 4 *Daly*, 343; affirmed, 52 *N. Y.*, 647; *Hubbell* agt. *Van Schoening*, 49 *N. Y.*, 326).

I cannot assent to the proposition that there was no mutuality in the covenant to renew. The case mainly relied upon to sustain it (*Codding* agt. *Walmsley*, 1 *Hun*, 585) fails to substantiate the point. That was an action to enforce specific performance of a contract for the sale of real estate, based upon an option to purchase reserved in a lease within a specified time upon the payment of a specified sum of money, and the assumption of certain liabilities as a condition of the purchase, which was not complied with within the time prescribed. As the plaintiff failed to show a performance of the condition, the court properly held that he had not acquired any vested interest in the property, and the contract was unilateral.

The principle thus established falls far short in its application to a case in which, prior to the alleged forfeiture, a party

having a vested interest in property to the extent at least of $30,000 omits by pure accident or mistake to give notice of his option until thirty-six days after the contract time ( *Van Campan* agt. *Knight*, 65 *N. Y.*, 580 ; *see, also, White* agt. *Schuyler*, 31 *How. Pr.*, 38 ; *Ex parte Hunter*, 1 *Ed. Ch.* 1).

Admitting the theory as stated by the lord chancellor and justices in *Hughes* agt. *Metropolitan Railway Company* (*Eng. Law Report Appeal Cas.* [*vol.* 2], 439), that a court of equity has no right to grant relief by way of mercy, or merely to save a forfeiture, all the authorities concede that an honest mistake or ignorance of facts is a good ground for equitable interference (*Henry* agt. *Tupper*, 29 *Vt.*, 358 ; *Rawstorne* agt. *Bentley*, 4 *Brown's Ch. R.*, 415).

The plaintiff continued in possession and the defendant received the rent after the expiration of the term.　Such continued possession shows an intention to claim a renewal of the lease (*Holsman* agt. *Abrams*, 2 *Duer*, 446); and although it was not a literal compliance with the contract which required a written notice within a specified time, yet in the absence of gross laches or willful neglect, it clearly meets the ruling of lord REDESDALE, in *Lennon* agt. *Napper* (2 *Sch. & Lef.*, 682), that where a party has acted fairly, and no injury has been done to the other party by a failure to perform within the time prescribed, equity will grant relief (*Maxwell* agt. *Ward*, 11 *Price*, 16).

In *Wheeler* agt. *Connecticut Mutual Life Insurance Company* (82 *N. Y.*, 543), it was the peculiar nature of the contract of life insurance that gave emphasis to the decision.　It is not applicable or controlling in the present case.

The defendant knew that plaintiff's option expired on September 25, 1881, and while under no legal obligation to give notice of that fact, equity in all candor asks, if it was the intention to make time of the essence of the contract, and assume the ownership of such valuable interests, why was the plaintiff left without notice of such intention?

As a corporate body, the defendant rested and had legal

authority to rest upon its rights. But when it appears that a rigid enforcement of its demand would work substantial injustice, equity intervenes and carries out the contract according to its original intention.

The plaintiff is entitled to the relief, and judgment is ordered as asked for in the complaint.