BENNET GORDON, Respondent, *v.* HELEN MAZUR et al., Individually and as Trustees, Appellants.

First Department, June 8, 1954.

*Samuel Gottlieb* of counsel (*Harry Giesow* with him on the brief; *Spiro, Felstiner & Prager,* attorneys), for appellants.

*Abraham Wilson* of counsel (*John C. Walsh* and *Harold N. Schwinger* with him on the brief; *Kadel, Wilson & Potts,* attorneys), for respondent.

BOTEIN, J. Plaintiff and defendant Helen Mazur, together with other persons, owned certain real property as tenants in common. Plaintiff had a 30% interest and Mrs. Mazur's interest was 21⅔%. In August, 1947, plaintiff and Mrs. Mazur entered into an agreement wherein they mutually agreed that neither of them would " sell, transfer or assign " his or her respective interest in the property without first offering it to the other at cost. The cost price was to be ascertained by named accountants and this determination was to be final and binding. The agreement provided for ten days' notice by registered mail within which period the recipient could exercise the option to purchase the property.

Several years after the execution of this agreement Mrs. Mazur, without giving written notice to plaintiff as required by the afore-mentioned option agreement, conveyed her entire interest to two of her attorneys, as trustees. Under this indenture agreement Mrs. Mazur's interest was set up in trust for her infant son, who was to receive the income for a stated period and the entire principal when he reached age thirty. The trust was irrevocable, and Mrs. Mazur retained no reversionary or remainder interest.

A year later, when plaintiff allegedly first learned of the conveyance, he demanded that Mrs. Mazur's interest in the property be conveyed to him pursuant to the terms of the option agreement. Upon her refusal to do so this action for specific performance was instituted against Mrs. Mazur and the trustees, individually and in their capacity as trustees. A financial statement prepared by the accountants designated in the option agreement fixed the value of Mrs. Mazur's interest at $30,523.71, which plaintiff is ready, willing and able to pay. After trial the Trial Justice directed that the defendant trustees convey the 21⅔% interest in the property to plaintiff upon his paying them the afore-mentioned cost price.

The Trial Justice properly found that the voluntary conveyance to the trustees was a breach of Mrs. Mazur's agree-

ment not to " sell, transfer or assign " her interest " except to [plaintiff] ". Defendants argue that the restriction applied only to a sale, and that the deed to the trustees was in the nature of a gift. But the words " transfer " and " assign " are not synonymous with " sell ". Through long usage and judicial construction they have acquired meanings with a broader connotation (Black's Law Dictionary [3d ed.], pp. 154, 155; Webster's New International Dictionary; *Phelps-Stokes Estates* v. *Nixon,* 222 N. Y. 93, 100; *O'Mara* v. *Dentinger,* 271 App. Div. 22, 28; *Kavanaugh* v. *Cohoes Power & Light Corp.,* 114 Misc. 590, 608). The three words above quoted are linked in combination throughout the option agreement and must be given their comprehensive, aggregate significance in relation to the passing of Mrs. Mazur's title in the property. The language of the contract is unambiguous and on its face prohibits the conveyance to the trustees; and it is not the court's function to substitute a new agreement for the parties.

Defendants have interposed defenses to the effect that plaintiff consented to the conveyance to the trustees and thereby waived any objection thereto. These defenses are based on a conversation which a lawyer had with plaintiff.

This lawyer represented all the co-owners in the acquisition and operation of the real property. Acting on behalf of both principals herein, he drew the option agreement. Later, and with all good intentions, he drafted the deed to the trustees and the trust indenture, in which he and a law partner were named as cotrustees. This lawyer testified that he had the following conversation with plaintiff a few months before the execution of the deed and trust indenture — a conversation which must be considered against the background of social and professional intimacy in which the lawyer saw plaintiff and the Mazurs almost daily at that time: " Q. Tell us what you told Mr. Gordon [plaintiff] and what he told you? A. I told Mr. Gordon that Mr. Mazur has talked to me shortly before that about the advisability of Mrs. Mazur transferring her interest in the property under a trust to be established, and that the beneficiary of the trust was to be the son of Mr. and Mrs. Mazur, and that I told Mr. Mazur that for his purposes — and Mr. Mazur has been a client and friend of mine for many years — I did not think it was an advisable thing to do, but he wanted it done anyway. I told Mr. Gordon that a transfer such as was contemplated would not require his consent or anybody's consent, and Mr. Gordon said it was per-

fectly all right with him, and that it did not concern him particularly.''

The Trial Justice in his decision found that this conversation had taken place in January, 1951 — about sixteen months before plaintiff asserted his claim under the option agreement. In rejecting defendants' contentions, the trial court made the following finding: '' 51. Plaintiff's said statement in the context in which it was made did not constitute a waiver or a consent and was wholly executory and promissory in nature and did not influence the conduct of the defendants on May 1, 1951 when they executed said deed and trust indenture.''

In addition, it would appear that plaintiff had been advised by his attorney that his consent to the proposed transfer was not required; and therefore, since '' it did not concern him particularly '', he had made the gratuitous gesture of saying that it was all right with him. Plaintiff, thus advised by his own lawyer, did not act with the '' full knowledge, or with sufficient notice of his rights '' (*Rothschild* v. *Title Guar. & Trust Co.,* 204 N. Y. 458, 464) essential to create an equitable estoppel.

At this point equity could correctly, but not comfortably, take leave of the parties and direct specific performance. However, an equitable epilogue to such a disposition is dictated, because this undenied conversation buttresses a conviction that emerges clearly and convincingly from the record. The Mazurs honestly believed there was no requirement under the 1947 option agreement that they obtain plaintiff's consent to the deed and trust for their infant son. At one time even the plaintiff shared this belief. Either that, or he deliberately permitted Mrs. Mazur to breach the option agreement, so that he might acquire her interest at cost. Mrs. Mazur's interest in the property has increased greatly in value; and it is inconceivable that she would knowingly have courted loss of her profits. There is no suggestion of any fraud on her part — only of a grave mistake.

While such a mistake might not avail the defendants in an action for damages at law, it will not foreclose inquiry by a court of equity into the justice of bestowing a windfall on one party because the other party misconstrued the technical provisions of their contract. Before decreeing specific performance in such a case, the court will measure relative hardships and prejudices as well as nice legal rights (*Covart* v. *Johnston,* 61 Hun 622, affd. 137 N. Y. 560; *New York Life Ins. & Trust Co.* v. *Rector of St. George's Church,* 64 How. Prac. 511; *Willard*

v. *Tayloe,* 8 Wall [U. S.], 557; *Jones* v. *Gianferante,* 305 N. Y. 135; *Eiseman* v. *Josephthal,* 71 Misc. 288). "In general it may be said that the specific relief will be granted when it is apparent, from a view of all the circumstances of the particular case, that it will subserve the ends of justice; and that it will be withheld when, from a like view, it appears that it will produce hardship or injustice to either of the parties." (*Willard* v. *Tayloe, supra,* p. 567.)

Evidently the 1947 options were given to maintain compatibility in the conduct of the joint enterprise — a defensive device to forefend against the importation of an uncongenial stranger into the operation of the property. Clearly the mutual options were not given with the thought in mind of a co-owner turning a profit at the expense of his or her associate, but to furnish an expedient alternative to the proven desirability of maintaining the *status quo* in co-ownership. The original purpose of the agreement would therefore be fulfilled if Mrs. Mazur were restored to ownership of her former 21⅔% interest.

In deciding whether substantial, if not exact, justice will be achieved by directing a reconveyance of the property by the trustees to Mrs. Mazur, we must consider the interests of plaintiff and Mrs. Mazur's infant son.

Plaintiff has not changed his position in any substantial sense as a result of the trust conveyance, nor has he suffered any damages of consequence. If Mrs. Mazur is restored to her former status as a co-owner the plaintiff will lose nothing but an uncontemplated opportunity to gather in a windfall.

The infant son, however, is the beneficiary of a trust fund which pursuant to the judgment entered in Special Term is entitled to receive $30,523.71, the ascertained cost price of his mother's interest in the property. He is not represented directly in this action, and his interest in the trust estate should not be destroyed.

It would appear that the Mazurs are persons of some means. Accordingly, the decision and judgment entered at Special Term should be modified so as to direct the defendant trustees to convey the 21⅔% interest in the property back to Mrs. Mazur, provided that within sixty days after service of notice of entry of the order to be entered herein the defendant Mrs. Mazur pays unconditionally to the defendant trustees the sum of $30,523.71, to be held and administered by them in accordance with the provisions of the trust indenture dated May 1, 1951; and Mrs. Mazur should in that event pay all costs in this court and in the court below. In the event the above-mentioned payment is

not made to the trustees by Mrs. Mazur within the time specified, the decision and judgment entered herein at Special Term, Part V, should in all respects be affirmed and should then be operative immediately.

PECK, P. J., COHN, BREITEL and BASTOW, JJ., concur.

Judgment unanimously modified in accordance with the opinion herein and, as so modified, affirmed. Settle order on notice.