HADCOCK MOTORS, INC., et al., Respondents, v ANTHONY W. METZGER, Appellant.

Fourth Department, February 28, 1983

APPEARANCES OF COUNSEL

*Jones & Jones (Peter K. Skivington, Sutton, De Leeuw, Clark & Darcy* of counsel), for appellant.

*Raymond S. Sant* for respondents.

OPINION OF THE COURT

SCHNEPP, J.

Defendant vendee appeals from a judgment which compels him to specifically perform an agreement to purchase real and personal property associated with an automobile dealership operated by plaintiff Hadcock Motors, Inc. The underlying issue is whether defendant's repudiation of the contract excuses the plaintiff vendors' failure to perform, after the commencement of the specific performance action, an explicit contractual condition. We hold that plaintiffs' inability to prove performance of the condition constitutes a bar to the grant of specific performance.[1]

On April 6, 1979 the parties entered into a "Buy and Sell" agreement which included assets used in the conduct of a Chevrolet agency in Fair Haven, New York, consisting of: (1) described real property, (2) furniture, fixtures, equipment and tools which were itemized and described in an attached Exhibit B which specified their location in "sales office", "outer office", "parts department" and "shop" and, (3) all inventory of parts, accessories, batteries, tires, gas and oil "on premises on date of transfer". The purchase price was apportioned in dollar amount respectively to land, buildings, equipment and inventory. An adjustment of the price of the inventory based on the value of these items on the premises on the date of transfer was provided for. Accounts payable and receivable and unfilled orders for Chevrolet products were not subject to the purchase agreement and remained plaintiffs' property and responsibility. As conditions precedent to the sale, the agreement required written approval of the transaction by General Motors and "[a]pproval of the [p]urchaser as a dealer by the General Motors Corporation, Chevrolet Division" prior to July 16, 1979, the designated closing date of the transaction. Further, and of more central concern on this appeal, the agreement contained the proviso that, pending the closing, plaintiffs shall continue to conduct the "agency in

---

1. Plaintiffs have not alleged a cause of action for damages.

the same manner in which it has heretofore been conducted", preserve the organizational efficiency of the agency and maintain its "achieved" work standards.

On or about July 24, 1979 the parties were notified orally by a representative of the Chevrolet regional office that the transaction involving the change of ownership had been approved and that General Motors had approved defendant's proposal for a Chevrolet franchise. The franchise approval was in writing, although no copy was forwarded to defendant. Thereafter, defendant communicated a request for an October 1, 1979 closing date which met with plaintiffs' approval. On October 9, 1979 redated abstracts of title and a survey map were transmitted to defendant's attorney by plaintiffs' attorney who requested an early closing date. A copy of the proposed deed and an amended survey map was forwarded on October 11, 1979. On October 10, 1979 defendant advertised the introduction of the new 1980 Chevrolet and invited the public to visit "Metzger Chevrolet", the "new Chevrolet dealer in Fair Haven". At the showing he introduced himself as the new owner of the dealership. On October 22, 1979 defendant's attorney raised objection to the title, returned the abstracts and requested a fee title insurance policy for reasons stated in his transmittal letter. He also requested compliance with the "Bulk Sales Act"[2] or an affidavit of no debts. On November 6, 1979 defendant's attorney orally advised plaintiffs' attorney that defendant refused to close the transaction, and by letter dated December 21, 1979 he returned all of the title documents, stating that "the time delay * * * has been unreasonable." On February 1, 1980 plaintiffs commenced this action for specific performance. In July, 1980 they voluntarily surrendered the Chevrolet dealership and sold the signs, parts and accessories of the business to General Motors under the termination clause of their franchise agreement.

Following a nonjury trial, specific performance was granted to plaintiffs and defendant was directed to pay the purchase price expressed in the contract with an abatement for the value of the equipment described in Exhibit B

---

**2.** Uniform Commercial Code — Bulk Transfers (Uniform Commercial Code, § 6-101 et seq.). ·

"which is not available", and to pay the value of the "inventory" based on its present appraisal. The trial court found that General Motors orally approved the transaction and the transfer of the dealership; that defendant was required to obtain written approval of the transaction from General Motors which he neither requested nor received and which he waived by his actions in going forward to consummate the transaction after receipt of oral notification from General Motors; that plaintiffs were able to convey a marketable title to the real property and to comply with the "Bulk Sales Act" in connection with the transfer of the personal property; that time was not made of the essence and no unreasonable delay in the closing occurred; and that the failure of plaintiffs to conduct the business after June, 1980 was not a defense to the action since plaintiffs' ability to conduct the business "in the same manner" was rendered impossible by defendant's acts which forced plaintiffs to surrender the franchise and excused their failure to perform this condition. The court concluded that plaintiffs were ready, willing and able to perform the contract to convey the property; that defendant refused to perform when the car market faltered; and that specific performance will give defendant his bargain.

While we agree that defendant complied with or waived the conditions precedent concerning General Motors' approval, that plaintiff established its ability to convey clear title and to comply with the "Bulk Sales Act"[3] and that no unreasonable delay occurred in the closing of the transaction, we disagree that plaintiffs are entitled to specific performance.

Specific performance is a discretionary remedy which is an alternative to the award of damages as a means of enforcing a contract. A party who seeks specific performance must prove that he has substantially performed his contractual obligations or tendered performance within the time specified in the agreement or within a reasonable time thereafter; that he is ready, willing and able to perform those contractual obligations not yet performed and not waived by the defendant; and that, except where

---

**3.** No proof was adduced as to the nature of the specific equipment that was available for conveyance under the agreement.

the contract is one for the sale of real property, he has no adequate remedy at law (see, generally, 55 NY Jur, Specific Performance, §§ 4, 25; 4 Pomeroy, Equity Jurisprudence [5th ed], §§ 1401, 1402, 1407). Where a vendor of real property is unable to convey that which he has contracted for he may seek specific performance with abatement of the price if the deficiency is of small importance or is immaterial to the purchaser's enjoyment of the property, so that the vendee will get substantially what he contracted for (see 62 NY Jur, Vendor & Purchaser, § 192; 71 Am Jur 2d, Specific Performance, § 132; Ann., 81 ALR 900; cf. *Satterly v Plaisted,* 52 AD2d 1074, 1075, affd 42 NY2d 933).

If we were able to find that the contract at issue was essentially one for the sale of real property, there would be no difficulty in concluding that plaintiffs are entitled to specific performance with abatement. Plaintiffs alleged in their complaint that they stand willing to perform their obligations and responsibilities under the contract. A title policy admitted into evidence and the testimony of the title insurance underwriter substantiate the claim that plaintiffs were ready, willing and able to convey good and marketable title to the real property. Although defendant argues that the wives of the individual plaintiffs who had an interest in the property would not execute the necessary documents for the sale, there was no evidence to this effect and this was a question of fact which was determined in plaintiffs' favor. Further, it was defendant's duty to obtain the written approval of General Motors and, since he never requested such approval, this condition precedent was waived. In any event, plaintiffs met their burden of proof on this issue since the evidence shows that the failure to perform this condition was due to defendant's conduct and that General Motors' policy is to provide written approval only after the resignation of the existing dealer has been submitted (see *Weisner v 791 Park Ave. Corp.,* 6 NY2d 426; *Norgate Homes v Central State Bank,* 82 AD2d 849, 850; *Alderman v Central N.Y. Arterial Markets,* 24 AD2d 1046).

However, before decreeing specific performance, a court of equity must look at the substance and not merely the letter of the contract to determine the intent of the parties

and must "measure relative hardships and prejudices as well as nice legal rights". (*Gordon v Mazur*, 284 App Div 289, 292, affd 308 NY 861; see, also, Ann., 81 ALR 900.) Here the object of the contract was not limited to a transfer of real property and associated personal property; the plain language of the agreement compels the conclusion that more than a mere sale of real property and chattels was contemplated. The contract expressly provided that plaintiffs must continue to conduct the business in the same manner in which it "has heretofore been conducted". Without doubt, the intended business purpose and the principal aim of this agreement was to transfer an operating automobile agency with all its appurtenances, except the franchise which was to be dealt with separately. If this sale were intended to be solely a real property transaction, no purpose would be served in incorporating a covenant not to compete which prohibited plaintiffs from any involvement in an automobile business within the area for a five-year period. Nor, if this were the intention of the sale, would any purpose be served in requiring General Motors' approval not only of the transaction but also of the purchaser as one of its dealers. The primary purpose of the contract was to transfer an automobile agency with all the necessary furniture, equipment, tools, parts and inventory without interruption of business. The continuity of business pending the closing was an essential element of the bargain struck by the parties. It was a condition on which the entire agreement was premised. The nature of the property interests involved and the avowed object of the parties implied more than a real property transaction.

There is no doubt and the record establishes that defendant's repudiation of the contract was a factor in the chain of events which led to plaintiffs' surrender of the franchise, and undoubtedly had an effect on plaintiffs' ability to continue the operation of the business. Used cars which were not included in the sale were wholesaled and new vehicles were minimally ordered in anticipation of defendant's takeover. During this period there was a general downswing in automobile sales and interest rates increased. Moreover, there is evidence that plaintiffs' operation lost credibility due to defendant's announcement of

the upcoming new franchise and that customers were reluctant to buy a car from plaintiffs when it would be serviced by defendant. The fact remains, however, that plaintiffs did not comply with the condition of the contract which required that they continue to conduct business.

This condition was an integral part of the contract and its performance by the parties seeking enforcement of the contract was a prerequisite to the conveyance of the real and personal property. It was not a useless condition and defendant's repudiation of the contract did not excuse plaintiffs from their obligation of proving its performance (see *Ufitec, S. A. v Trade Bank & Trust Co.*, 21 AD2d 187, 190, affd 16 NY2d 698). So long as they insisted upon specific performance, they waived defendant's repudiation of the contract (see *Bowen v Horgan*, 259 NY 267). Proof of performance of the condition, or at least a willingness to perform it or defendant's waiver of default, was an essential element of their cause of action for specific performance. The proof demonstrates, however, that plaintiffs, for whatever reason, made an independent judgment during the pendency of this action to surrender the franchise, to put it beyond their power to perform the contractual condition and to destroy the basis of the contract. Their voluntary surrender of the franchise heralded their inability to comply with the contractual condition after that date.[4] By their failure to continue the business, plaintiffs were no longer "ready, willing and able" to perform their contractual obligations and thus were unable to prove an essential element of their cause of action. By "emptying the store" and failing to maintain the continuity of business, their right to seek specific performance vanished.

Specific performance should " 'be withheld when * * * it appears that it will produce hardship or injustice to either of the parties.' " (*Gordon v Mazur*, 284 App Div 289, 293, affd 308 NY 861, *supra*.) It will not be decreed where it would violate the spirit of the contract or defeat the object for which the contract was made (see *Phalen v United States Trust Co. of N. Y.*, 186 NY 178; see, also, 55 NY Jur,

---

4. The trial court found that from the act of surrendering the franchise "it can be assumed that business has not been conducted in the same manner since that time".

Specific Performance, § 34, pp 502, 505; 62 NY Jur, Vendor and Purchaser, § 192, p 497).

By granting specific performance to plaintiffs the trial court, in essence, rewrote the contract between the parties to delete any implication of their intent to transfer an operating agency, made a new contract between them and directed the enforcement of a contract not intended by them. Under the conditions in this case specific performance is oppressive and inequitable and produces a harsh and unfair result. Simply put, equity will not grant specific performance in these circumstances because it will not aid a party who is himself in default of performance and it cannot decree that which plaintiffs are unable to perform.

Accordingly, specific performance should be denied to plaintiffs and the complaint dismissed.

DILLON, P. J., CALLAHAN, DENMAN, and BOOMER, JJ., concur.

Judgment unanimously reversed, on the law and facts, without costs, and complaint dismissed.