■ KATHERINE TERJEN, Respondent, v HENRY A. TERJEN, Appellant.—In a matrimonial action in which the parties were divorced by judgment dated November 28, 1979, the defendant appeals from an order of the Supreme Court, Kings County (Potoker, J.H.O.), entered October 15, 1986, which, *inter alia,* ordered that the former marital residence be sold and the proceeds be divided equally between the parties.

Ordered that the order is affirmed, with costs.

We agree with the Hearing Officer's conclusion that both parties were dilatory in complying with the terms of the stipulation which they entered into at the time of their divorce in 1979, under which the defendant husband had the right to purchase the plaintiff wife's share in the marital residence. This mutual waiver of rights and obligations distinguishes the instant case from our decision in *Marinello v Marinello* (125 AD2d 555). The defendant herein has not demonstrated such substantial performance of his obligations as to entitle him to the equitable remedy of specific performance of the stipulation, nor has he shown that such relief will not produce hardship to the plaintiff *(see, Castaldi v Multer,* 117 AD2d 699; *Hadcock Motors v Metzger,* 92 AD2d 1).

The arguments of our dissenting colleague do not establish

otherwise. The dissenter argues that the plaintiff is justly burdened with the entire responsibility for the parties' seven-year delay in seeking execution of the stipulation since the plaintiff obtained, but then declined to disclose, an appraisal of the marital premises in 1979. Further, as construed by the dissent, the plaintiff's alleged "wrongful" refusal to disclose her appraisal obviates any need to consider dilatory conduct or delays which may have been attributable to the defendant, who, we note, not only maintained exclusive possession of premises since June 1979 but, according to the plaintiff, wrongfully ejected her therefrom. Nevertheless, accepting, as the Judicial Hearing Officer properly determined, that the plaintiff was partially at fault for the delay, it cannot be said on this record that she was exclusively responsible therefor or that the delays which ensued can reasonably be attributed solely to the plaintiff's decision not to disclose her appraisal.

Indeed, the record reveals that soon after the appraisals were obtained, the parties became embroiled in another intractable dispute with regard to the computation of their respective interests in the premises, which dispute was never resolved, despite the existence of an arbitration clause in the stipulation. This further buttresses the conclusion that there was a mutual waiver of rights under the stipulation. Moreover, it appears that the defendant was not reluctant to permit the status quo to exist—under which he maintained possession of the premises—until he more recently decided to leave the State after his remarriage.

In determining whether to grant the defendant the equitable remedy of specific performance, we note that the equities do not favor the defendant, who has resided in the premises since the inception of the dispute and who would receive, in addition, a windfall, if he were now permitted to purchase the plaintiff's interest in the premises at a 1979 appraised value. It is notable in this respect that, pursuant to the order appealed from, the parties are to share equally in the proceeds of the premises, which amounts will undoubtedly exceed, for each, 100% of the value of the premises as estimated in the parties' original appraisals. In short, we conclude that the Supreme Court's order represents an appropriate exercise of its powers in equity and, accordingly, affirm. Mangano, J. P., Brown and Kooper, JJ., concur.

Balletta, J., dissents and votes to reverse the order appealed from, and to direct specific performance of the terms of the stipulation, with the following memorandum. The majority opinion is premised on a mutual waiver of the rights and

obligations set forth in the stipulation between the parties. I respectfully disagree with my colleagues since, in my view, the record does not support such a mutual waiver, and, accordingly, I vote to reverse the order appealed from.

The parties herein entered into a stipulation of settlement in open court on September 13, 1979, which was thereafter incorporated into the judgment of divorce granted on November 28, 1979. Pursuant to article V of the stipulation the defendant was to purchase the marital residence located in the Park Slope section of Brooklyn. Article V also set forth detailed provisions concerning the method for determining the valuation of the real property in question and the method of determining the amount to which each party was to be entitled since there was no agreement as to the percentages of interest the parties had in the marital property.

The current market value of the property was to be determined by 2 appraisers, 1 appointed by each of the parties. The appraisers were to have no personal connection with the parties themselves, but were to be familiar with Park Slope property values. The stipulation further provided that in the event the appraisals were more than $5,000 apart, the two appraisers were to select a third appraiser, whose valuation would be binding upon the parties, or, in the event the appraisals were less than $5,000 apart, the purchase price would be determined by utilizing the average of the two appraisals. The closing was to take place within 60 days after the price was finally established, "but the purchase price should be valid as of June 16, 1979".

If the parties were unable to agree on their respective interests in the equity in the property, the stipulation also provided that each was to appoint an accountant, and if the accountants could not agree on the equity interest of each of the parties, then either party could demand binding arbitration.

Pursuant to the terms of the stipulation of settlement, the plaintiff's attorney hired an appraiser in 1979 who estimated the market value of the property at $65,000. Since the plaintiff was dissatisfied with her own appraiser's valuation, she never agreed to disclose the report. The defendant likewise hired an appraiser who valued the property at $66,000. Beside never agreeing to the release of the first appraisal report, the plaintiff also requested that she be allowed to obtain a second appraisal, which request was denied by the defendant's attorney. It is clear that it was appropriate for the defendant's attorney to refuse that permission since the stipulation was

very specific with respect to the method of determining the price. Insofar as the valuations were less than $5,000 apart, the purchase price should have been fixed at $65,500, the average of the two appraisal amounts.

The record discloses that the parties may both have had inflated opinions as to the valuation of the house at that time, but they had struck a bargain, and they were bound to proceed pursuant to the terms and provisions of the stipulation. The defendant was always ready, willing and able to purchase the house, and it was only the plaintiff's dissatisfaction with her appraisal report that caused a halt in the negotiations between the parties.

The parties were also in disagreement as to their respective equitable shares in the house. The plaintiff's accountant determined the proper distribution would be 93% to the plaintiff and 7% to the defendant. An accountant hired by the defendant determined that the plaintiff was entitled to 53%, while the defendant was entitled to 47%. It is not surprising that the parties could not agree on their respective interests since they anticipated a problem with respect to such calculations when they signed the stipulation and made a specific provision for arbitration. The accountants for each of the parties did in fact meet with an arbitrator in the summer of 1983, although they did not ever proceed to arbitration. The plaintiff's accountant testified at the hearing that although he had advised the plaintiff of the differences in the figures, he never took any further action with respect to the financial analysis of the equity interests which was the subject of the disagreement. It also appears that in January 1984 the plaintiff's accountant told the accountant for the defendant that there was no point in meeting since their differences could not be reconciled.

Under the circumstances of this case it cannot be said that there was an implied mutual waiver of the terms and provisions of the stipulation of settlement. The plaintiff indicated at an early stage her unwillingness to proceed. She wanted to unilaterally vary the terms of the stipulation because of her dissatisfaction with her own appraisal. The refusal of the defendant's attorney to allow another appraisal by the plaintiff was proper, and to do otherwise might have indicated a waiver on the defendant's part of the specific provisions of the stipulation. As a purchase price could not be established solely due to the unwillingness of the plaintiff to abide by the terms of the stipulation, it was not incumbent upon the defendant to accede to the plaintiff's demands.

While it is true that the stipulation provided for the defen-

dant to receive "full and complete occupancy, possession and ownership" upon the purchase of the property, the defendant was in fact in possession of the property from June 19, 1979. Whether that possession was by self-help, or whether the plaintiff left voluntarily, is immaterial since it occurred prior to the signing of the stipulation.

The plaintiff is not prejudiced by virtue of inflated real estate values since 1979. It was she who stood in the way of finalizing the transaction, and to allow her to reap the benefits of an inflated real estate market would be unfair. She was willing to sit back and not enforce her rights when it was to her benefit to do so. By denying the defendant specific performance of the explicit terms of the stipulation, the majority effectively rewards the plaintiff for her intransigence. Under the circumstances of this case, the mere fact that the defendant failed to move at an earlier time for the transfer of title does not indicate that he waived the terms and provisions of the stipulation of settlement (see, Agati v Agati, 92 AD2d 737, affd 59 NY2d 830).

In *Marinello v Marinello* (125 AD2d 555), a case in which one of the parties sought a modification of their agreement, this court held that the Supreme Court did not have the power to modify the terms of the stipulation absent fraud, duress, mistake or overreaching. Although parties can mutually agree to change the terms of an agreement, either specifically or by implication, where there is not an express waiver, the evidence must be clear and convincing that the parties mutually intended to waive the provisions of the original agreement (57 NY Jur 2d, Estoppel, Ratification and Waiver, § 88).

Accordingly, the defendant was entitled to specific performance of the stipulation.