■ 380 YORKTOWN FOOD CORPORATION, Appellant-Respondent, v GREAT ATLANTIC & PACIFIC TEA COMPANY, INC., Respondent-Appellant. [817 NYS2d 88]—

In an action, inter alia, for a judgment declaring that the plaintiff did not breach a sublease, the plaintiff appeals from (1) so much of an order of the Supreme Court, Westchester County (Barone, J.), dated November 22, 2004, as granted that branch of the defendant's motion which was for summary judgment on so much of its counterclaim as seeks payment for certain real estate taxes and common area maintenance charges, and (2) so much of a second order of the same court, also dated November 22, 2004, as denied that branch of its motion which was for summary judgment on so much of its second cause of action as seeks a judgment declaring that it was not in default under the sublease for failure to pay fixed monthly rent and, in effect, denied that branch of its motion which was for summary judgment dismissing so much of the defendant's counterclaim as seeks payment for unpaid fixed monthly rent; and the defendant cross-appeals from so much of the first order as denied that branch of its motion which was for summary judgment on so much of its counterclaim as seeks percentage rent payments and, in effect, granted that branch of the plaintiff's motion which was for summary judgment dismissing that portion of the counterclaim.

Ordered that the first order is modified, on the law, by deleting the provision thereof which, in effect, granted that branch of the plaintiff's motion which was for summary judgment dismissing so much of the counterclaim as seeks percentage rent payments, and substituting therefor a provision denying that branch of the motion; as so modified, the order is affirmed insofar as appealed and cross-appealed from; and it is further,

Ordered that the second order is affirmed insofar as appealed from; and it is further,

Ordered that one bill of costs is awarded to the defendant.

On July 23, 1992, the plaintiff 380 Yorktown Food Corporation, and the defendant Great Atlantic & Pacific Tea Company, Inc., entered into a commercial sublease (hereinafter the sublease) for a supermarket located in Yorktown Heights. The defendant had leased the subject premises from S & H Shopping Center, Inc. (hereinafter the overlandlord), pursuant to a lease dated May 21, 1971 (hereinafter the overlease), under which the defendant was required to pay the overlandlord a fixed monthly rent, as well as certain additional amounts and charges, including real estate taxes (hereinafter RET), common area maintenance charges (hereinafter CAM), and annual percentage rent. The sublease similarly called for the payment by the plaintiff, on a pass-through basis, of any RET and CAM charged by the overlandlord pursuant to the overlease. The sublease also provided for the payment by the plaintiff of annual percentage rent.

The sublease contained a noncompetition provision prohibiting the defendant or any subsidiary or affiliate from opening a "store" within a designated "Trade Area" during the term of the sublease. In the event the defendant breached that provision, the sublease provided that the plaintiff would be entitled to reduce its rent payments to $8,750 per month.

At the time the sublease was entered into, the defendant also held the lease to a property across the street from the subject premises. There is no dispute that the defendant had operated that property as a Shopwell supermarket until the building was condemned as a result of structural defects. There is a factual dispute, however, as to whether the Shopwell was in operation when the plaintiff and the defendant entered into the sublease.

Moreover, it is undisputed that, from 1992 through 1998, the plaintiff paid no rent whatsoever and the defendant took no action to collect rent or other amounts due under the sublease. In or about September 1998, with full knowledge that the defendant intended to open a new Food Emporium at the location of the former Shopwell supermarket, the plaintiff approached the defendant to propose certain amendments to the sublease, including significant financial concessions. On November 17, 1998 the plaintiff and defendant entered into a "Modification of Sublease Agreement" (hereinafter the modification agreement), which included, in relevant part, a new fixed rent payment schedule, effective January 1, 1999, calling for substantially reduced monthly rent payments of $7,500 (inclusive of CAM

and RET) throughout 1999, increasing to $14,500 per month (exclusive of CAM and RET) beginning January 1, 2000, and increasing thereafter at the rate of $0.50 per square foot during each successive renewal period. In addition, the defendant forgave the plaintiff's nonpayment of rent and other charges during the first seven years of the sublease. In return, the defendant obtained a slightly reduced sales base for the calculation of annual percentage rent. The sublease otherwise remained in full force and effect. The modification agreement made no mention of whether the defendant's proposed opening of the Food Emporium constituted a breach of the sublease's noncompetition provision.

In 1999 the defendant opened its Food Emporium store as scheduled and, throughout 1999, the plaintiff paid the reduced monthly rent amount of $7,500 as contemplated in the modification agreement. Beginning in January 2000, however, the plaintiff paid the defendant only $8,750 per month in fixed rent, instead of the $14,500 called for in the modification agreement. The plaintiff continued paying that reduced monthly amount until at least December 19, 2003, when the defendant sent the plaintiff a demand letter seeking payment of $547,721.47 in unpaid fixed and additional rent under the sublease, as amended by the modification agreement. This litigation followed.

The plaintiff contends, inter alia, that it was entitled to pay only $8,750 in monthly rent because the defendant's opening of the Food Emporium store in 1999 constituted a breach of the noncompetition provision contained in the sublease. The defendant, in turn, contends that there was no breach because the Food Emporium merely replaced the Shopwell store previously operated by the defendant on that site. The defendant maintains that it is therefore entitled to the full fixed rent amount provided for under the modification agreement.

On this record, we agree with the Supreme Court's conclusion that there is a triable issue of fact as to the amount of fixed rent payable under the sublease, as amended by the modification agreement. There are unresolved factual issues as to whether the opening of the Food Emporium constituted a breach of the sublease, or whether the new store merely replaced the former Shopwell supermarket. Even assuming, however, that the plaintiff's interpretation of the sublease is correct, it does not follow that it is entitled, as a matter of equity, to specific performance of the noncompetition provision of the sublease under the circumstances presented (*see Gordon v Mazur*, 284 App Div 289, 292-293 [1954], *affd* 308 NY 861 [1955]; *cf. Market St. Assoc. Ltd. Partnership v Frey*, 941 F2d 588, 594 [1991]).

Conversely, assuming that the defendant's interpretation of the sublease is correct, there is a further issue as to whether the defendant's acceptance of reduced rent for a period of nearly four years constituted a waiver with respect to the period predating the December 19, 2003 letter of demand, notwithstanding the general nonwaiver provision in the sublease (*see Atkin's Waste Materials v May*, 34 NY2d 422, 427 [1974]; *compare with Jefpaul Garage Corp. v Presbyterian Hosp. in City of N.Y.*, 61 NY2d 442, 446 [1984]). Accordingly, the Supreme Court properly determined that neither party was entitled to summary judgment on this issue.

The Supreme Court erred, however, in granting that branch of the plaintiff's motion which was for summary judgment dismissing so much of the defendant's counterclaim as seeks percentage rent under the sublease and modification agreement. On this record, we discern triable issues of fact as to the proper interpretation of the annual percentage rent provision contained in the sublease, and its dependence, if any, on the defendant's own obligation to pay annual percentage rent pursuant to the terms of the overlease. Accordingly, neither party is entitled to summary judgment on this issue (*see Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851 [1985]).

No such uncertainly exists, however, with respect to the plaintiff's obligation to pay its share of RET and CAM. Under the clear terms of the sublease, such payments did not become due until 20 days after the defendant served the plaintiff with a demand for payment. Since the defendant did not serve a notice of demand for payment until December 19, 2003, no breach could have occurred until 20 days thereafter. Thus, contrary to the plaintiff's contention, the defendant did not waive its right to such payments. Moreover, the defendant tendered evidence showing that it made RET and CAM payments to the overlandlord, as required by the overlease. Therefore, the Supreme Court properly granted that branch of the defendant's motion which was for summary judgment on so much of its counterclaim as seeks payment of RET and CAM charges under the sublease (*see Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). Schmidt, J.P., Krausman, Spolzino and Fisher, JJ., concur.